**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ALL IN BITS, INC., | |
| Plaintiff, | Civil Action No. 23-cv-2270 |
| -against- | Hon. Eric R. Komitee |
| GRACE YU, | Service Date: June 9, 2023 |
| Defendant. | |

**DEFENDANT GRACE YU'S MEMORANDUM OF LAW**
**<u>IN SUPPORT OF MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ...................................................................................... 1

BACKGROUND ........................................................................................................... 2

I.     All in Bits, Inc. ....................................................................................... 3

II.    The Parties' Agreements .......................................................................... 3

III.   The #FreeDenis Campaign ....................................................................... 5

IV.   The Challenged Conduct .......................................................................... 6

       A.    Statements That Allegedly Breach the Non-Disparagement Provision ........... 6
           1.    Statements Regarding Restricting Covenants ..................................... 6
           2.    Statements Characterizing AiB ........................................................ 7
           3.    Statements Regarding Twitter Infiltration .......................................... 8
           4.    Responsive and Post-Litigation Statements ........................................ 8

       B.    Statements by Third Parties ..................................................................... 10

       C.    Alleged Disclosures of Confidential Information ......................................... 10

V.    Plaintiff's Causes of Action .................................................................... 12

ARGUMENT ............................................................................................................. 12

I.     Legal Standard ...................................................................................... 12

II.    The First Cause of Action Should Be Dismissed Because Plaintiff Fails to Allege Defendant Made the Challenged Statements With Actual Malice .......................... 13

       A.    New York's Anti-SLAPP Statute Applies to Plaintiff's First Cause of Action ............................................................................................ 13

       B.    Plaintiff Has Failed to Allege That The Challenged Statements Were Made With Actual Malice ......................................................................... 15

III.   The First Cause of Action Should Be Dismissed Because The Challenged Statements Do Not Breach the Non-Disparagement Provision ............................... 17

       A.    The Non-Disparagement Provision Prohibits Only False, Injurious Statements Concerning The Plaintiff ........................................................ 18

       B.    Statements of Opinion Do Not Violate the Non-Disparagement Provision .. 19
           1.    Statements of Opinion Cannot Be Proven True or False .................... 19
           2.    The Challenged Statements Are Statements of Opinion .................... 19

       C.    Certain Challenged Statements Cannot Injure the Plaintiff ........................... 20
           1.    Not "Of and Concerning" the Plaintiff ............................................ 20
           2.    Not Injurious to Plaintiff .............................................................. 20

IV.   The Supplemental Complaint Should Be Dismissed Because The Non-Disparagement and Confidentiality Provisions Are Unenforceable ....................... 21

CONCLUSION ........................................................................................................... 22

**Cases**

*Abbott v. Harris Publ'ns, Inc.*,
   No. 97-CV-7648 (JSM), 2000 WL 913953 (S.D.N.Y. July 7, 2000) ....................................13

*Albert v. Loksen*,
   239 F.3d 256 (2d Cir. 2001) ...............................................................................................13

*Aristocrat Plastic Surgery, P.C. v. Silva*,
   206 A.D.3d 26 (N.Y. App. Div. 1st Dep't 2022) .................................................................14

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ................................................................................................12, 13, 16

*Bernstein v. O'Reilly*,
   No. 17 Civ. 9483, 2019 WL 10995111 (S.D.N.Y. Mar. 5, 2019) .........................18, 19, 20, 21

*Chau v. Lewis*,
   771 F.3d 118 (2d Cir. 2014) ...............................................................................................19

*Church of Scientology Int'l v. Behar*,
   238 F.3d 168 (2d Cir. 2001) ...............................................................................................15

*Coleman v. Grand*,
   523 F. Supp. 3d 244 (E.D.N.Y. 2021) .......................................................................14, 15, 16

*Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*,
   551 F. Supp. 3d 320 (S.D.N.Y. 2021) ..................................................................................14

*Fairley v. Peekskill Star Corp.*,
   83 A.D.2d 294, 445 N.Y.S.2d 156 (2d Dep't 1981) ..............................................................13

*G.L. Mezzetta, Inc. v. City of Am. Canyon*,
   78 Cal. App. 4th 1087 (2000) ..............................................................................................22

*Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*,
   59 Cal.4th 277 (Cal. 2014) ..................................................................................................18

*Int'l Shoppes, Inc. v. At the Airport, LLC*,
   131 A.D.3d 926 (N.Y. App. Div. 2d Dep't 2015) .................................................................14

*Jacob v. Lorenz*,
   No. 21 Civ. 6807, 2022 WL 4096701 (S.D.N.Y. Sept. 7, 2022) ....................................*passim*

*Jacobus v. Trump*,
  55 Misc. 3d 470 (N.Y. Sup. Ct. 2017), *aff'd*, 156 A.D.3d 452 (N.Y. App. Div. 2017) ..............................................................................................................19

*Kamfar v. New World Rest. Grp., Inc.*,
  347 F.Supp.2d 38 (S.D.N.Y. 2004)..............................................................18

*Mable Assets, LLC v. Rachmanov*,
  192 A.D.3d 998 (N.Y. App. Div. 2d Dep't 2021) .......................................14

*Margolies v. Rudolph*,
  Case No. 21-cv-2447-SJB, 2022 WL 2062460 (E.D.N.Y. June 6, 2022) ........................14, 17

*Masson v. New Yorker Magazine, Inc.*,
  501 U.S. 496 (1991)......................................................................................16

*Mirza v. Amar*,
  513 F. Supp. 3d 292 (E.D.N.Y. 2021) ....................................................18, 19

*Morningstar, Inc. v. Superior Court*,
  23 Cal.App.4th 676 (1994) .......................................................................19, 20

*Navellier v. Sletten*
  29 Cal.4th 82 (2002) .....................................................................................14

*Parsable, Inc. v. Landreth*,
  Case No. 22-cv-01741-CRB, 2022 WL 19692034 (N.D. Cal. Aug. 5, 2022).................18, 19

*Penrose Hill, Ltd. v. Mabray*,
  479 F. Supp. 3d 840 (N.D. Cal. 2020) .........................................................14

*Price v. Stossel*,
  620 F.3d 992 (9th Cir. 2010) ........................................................................18

*Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*,
  230 F. Supp. 3d 290 (S.D.N.Y. 2017).........................................................20

*Sorvillo v. St. Francis Preparatory Sch.*,
  607 Fed. App'x 22 (2d Cir. 2015).................................................................20

**Statutes**

Cal. Gov. Code § 12964.5(a)(1)(B)(i) ...............................................................21

Cal. Gov. Code § 12964.5(a)(1)(B)(ii) ..............................................................22

Cal. Gov. Code § 12964.5(a)(2)..........................................................................22

N.Y. Civ. Rights Law § 76-a .........................................................13, 14, 15, 17

**Other Authorities**

Fed. R. Civ. P. 12(b)(6)..................................................................................................1, 2, 12, 17

Defendant Grace Yu ("Defendant" or "Ms. Yu"), hereby submits this memorandum of law in support of her motion to dismiss (the "Motion") the first supplemental complaint [ECF No. 15] (the "Supplemental Complaint") of Plaintiff All in Bits, Inc. ("Plaintiff" or "AiB") pursuant to Federal Rule of Civil Procedure 12(b)(6).

## **PRELIMINARY STATEMENT**

By this action, Plaintiff, ironically, invokes restrictive covenants in Defendant's agreements with the company to silence her criticism of Plaintiff's coercive use of restrictive covenants and intimidation tactics when dealing with its employees and contractors. New York's anti-SLAPP statute and California law, which governs the interpretation of Plaintiff's agreements with the Defendant, doom Plaintiff's causes of action.

New York's anti-SLAPP statute holds Plaintiff to a high bar for claims, like Plaintiff's First Cause of Action, which seek to hold Defendant liable for public statements on a matter of public concern. Pursuant to New York's anti-SLAPP statute, Plaintiff is required to plead and prove that Defendant made statements about the Plaintiff with actual malice. Plaintiff, however, has not alleged any specific facts that would satisfy this exacting standard. In fact, Plaintiff's allegations undercut any inference that Defendant subjectively knew or had reason to believe her comments were false. The First Cause of Action can be dismissed on this basis alone.

In any event, the First Cause of Action can also be dismissed because Plaintiff has failed to allege that Defendant made any statements that violate the non-disparagement provision in her consulting agreement with the company. By its plain language, the non-disparagement provisions bars only false claims by the Defendant that would tend to injure the Plaintiff's reputation. The statements Plaintiff apparently challenges fall outside these strictures in multiple respects. Defendant's opinions about the Plaintiff cannot be proven true or false and, thus, do not violate

1

the non-disparagement provision. Certain of Defendant's statements do not even identify the Plaintiff and others are mere requests to the Plaintiff to employ ethical practices and "lead by example." Defendant cannot be liable for this conduct.

Finally, both the First and Second Causes of Action asserted in the Supplemental Complaint fail because the contractual provisions upon which these claims are based are unenforceable under California law. California law expressly prohibits employers from conditioning employment upon a worker signing away his or her right to discuss and disclose unlawful acts in the workplace. Pursuant to California law, any contractual provision with this effect is unenforceable as contrary to public policy. The non-disparagement and confidentiality provisions that form the basis of Plaintiff's First and Second Causes of Action, respectively, have this effect, as evidenced by this lawsuit. Such provisions are, accordingly, unenforceable and cannot sustain causes of action against Defendant.

## BACKGROUND[1]

Plaintiff commenced this action by filing its initial complaint on March 23, 2023. *See* ECF No. 1. The complaint asserted a sole cause of action against Defendant for breach of contact. *Id.* at ¶¶ 62-67. Specifically, Plaintiff alleged that Defendant made a series of statements on Twitter that breached a non-disparagement provision in a consulting agreement she entered into with the Plaintiff. *Id.* at ¶¶ 1, 63-64. Pursuant to a stipulation of the parties [ECF No. 14], Plaintiff filed its Supplemental Complaint on May 19, 2023. *See* ECF No. 15. The Supplemental Complaint asserts two causes of action: one for breach of the non-disparagement provision, which is now

---

[1] Unless otherwise indicated, Defendant is merely summarizing what Plaintiff has alleged in the Supplemental Complaint for purposes of bringing this Motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendant's recitation of these allegations is not, and should not be construed as, an admission that the allegations are accurate or complete.

based on additional post-litigation statements; and one for breach of confidentiality provisions in a consulting agreement and a non-disclosure agreement Ms. Yu signed with AiB. *See id.* at ¶¶ 94-105.

## I.      All in Bits, Inc.

Plaintiff claims to be the company behind the "groundbreaking blockchain consensus technology, Tendermint, that powers the Cosmos Network." *Id.* at ¶ 2. According to Plaintiff, "[b]ecause the Cosmos system builds on existing blockchains, it gives users and developers the ability to innovate and integrate into a larger network with a broader platform." *Id.* at ¶ 3. Plaintiff provides a developer tool called "Ignite CLI," which allegedly accelerates the development of blockchain applications and is used by over a dozen blockchain projects and hundreds of developers within the Cosmos network. *Id.* at ¶ 5. Plaintiff claims that "[t]he Cosmos Network promotes the free flow of information and freedom of expression and empowers users to create transparency in their community," which is "an important asset of the business that AiB has carefully cultivated." *Id.* at ¶ 26.

## II.     The Parties' Agreements

Defendant was hired by Plaintiff as an independent contractor to provide consulting services related to Ignite initiatives. *Id.* at ¶ 6. Defendant provided services to Plaintiff from October 2022 to January 2023. *Id.* at ¶ 7. On or around August 9, 2022, Ms. Yu and AiB entered into a non-disclosure agreement (the "NDA"), which Plaintiff alleges "prohibited either party from disclosing 'any Confidential Information of the other party to third parties.'"[2] *Id.* at ¶ 29; *see also id.* at ¶ 101. Plaintiff does not attach the NDA to the Supplemental Complaint or include the definition of "Confidential Information" used in the NDA. *See generally*, *id.*

---

[2]      This provision of the NDA shall be referred to herein as the "NDA Confidentiality Provision."

When Ms. Yu was hired by AiB, she also entered into a consulting agreement, dated October 10, 2022 (the "Consulting Agreement") with AiB. *Id.* at ¶ 30. Plaintiff also does not attach the Consulting Agreement to the Supplemental Complaint, but alleges that it provides the following:

> The Parties shall not at any time make or cause to be made during the term of this Agreement and extending for a twelve-month period after termination of this Agreement, publicly or privately, verbally or in writing, directly or indirectly, any defaming and/or disparaging, derogatory, misleading or false statement about the other Party or its products, or any current or former directors, officers, employees or agents, or the business strategy, plans, policies, practices or operations of the other Party to any person or entity, including members of the investment community, press, customers, competitors, employees, and advisors.[3]
>
> . . .
>
> At all times during the Relationship and thereafter, Consultant shall hold in strictest confidence, and not use, except for the benefit of the Company to the extent necessary to perform the Services, and not disclose to any person, firm, corporation or other entity, without written authorization from the Company in each instance, any Company Information or Company Confidential Information that Consultant obtains from the Company or otherwise obtains, accesses or creates in connection with, or as a result of, the Services during the term of the Relationship, whether or not during working hours, until such Confidential Information becomes publicly and widely known and made generally available through no wrongful act of Consultant or others who were under confidentiality obligations as to the item or items involved.
>
> "Confidential Information" means any and all information and physical manifestations thereof not generally known or available outside the Company and information and physical manifestations thereof entrusted to the Company in confidence by third parties,

---

[3] This provisions shall be referred to herein as the "Non-Disparagement Provision."Recognizing that the Non-Disparagement Provision prohibits statements against the Plaintiff and its "products, or any current or former directors, officers, employees or agents, or the business strategy, plans, policies, practices or operations of the other Party to any person or entity, including members of the investment community, press, customers, competitors, employees, and advisors,"for ease of reference, the foregoing shall be referred to herein as just the "Plaintiff."

whether or not such information is patentable, copyrightable or otherwise legally protectable.[4]

*Id.* at ¶¶ 32-34.  Plaintiff alleges it terminated Defendant's services under the Consulting Agreement on January 13, 2023.  *Id.* at ¶ 35.

## III.  The #FreeDenis Campaign

In the Supplemental Complaint, Plaintiff acknowledges a public controversy around its treatment of a software engineer named Denis Fadeev ("Fadeev").  *See id.* at ¶¶ 37-40.  AiB had contracted Fadeev as a software developer engineer and, in July 2022, hired Fadeev as VP of Product to define the vision, strategy and roadmap for Ignite products and their promotion.  *See* id. at ¶ 37.  Fadeev allegedly resigned on July 1, 2022, but later contracted as a consultant to AiB, starting on August 9, 2022.  *Id.* at ¶ 37.  When Fadeev's consulting agreement was terminated in January 2023, he allegedly sought to "fork" the Ignite project (*i.e.*, copy the source code to use on an independent software).  *Id.* at ¶ 38.  Starting on January 30, 2023, "a number of Twitter users active in the Cosmos Network and blockchain development community expressed anger over claims that Mr. Fadeev was allegedly being prevented from copying the software he helped develop, to build an alternative competing product, due to the three-year non-compete clause in his contract."  *Id.* at ¶ 39.  The Cosmos community would include #FreeDenis when posting about this topic.  *See id.* at ¶¶ 39-40.  Plaintiff alleges that a number of Defendant's statements about AiB "occurred in support of the '#freeDenis' posts." *Id.* at ¶ 40.

---

[4]    This provision and the foregoing provision ("At all times . . .") shall be referred to herein as the "Consulting Confidentiality Provision"and, with the NDA Confidentiality Provision, the "Confidentiality Provisions."

**IV.    The Challenged Conduct**

**A.    *Statements That Allegedly Breach the Non-Disparagement Provision***

Plaintiff contends that a number of the statements Defendant has made on Twitter, YouTube, and in a Telegram "chat group with thousands of active members" (the "Challenged Statements") breach the Non-Disparagement Provision. *See id.* at ¶¶ 41-50, 57-62, 76-87, 94-99. Plaintiff categorizes Defendant's Twitter statements into "at least three separate categories:" (1) accusing AiB of using unenforceable non-compete agreements and NDAs; (2) calling AiB "pathological, sociopathic, and hostile;" and (3) alleging AiB's CEO, Jae Kwon ("Kwon"), "infiltrated" an employee's Twitter account. *See id.* at ¶¶ 42-50.

**1.    *Statements Regarding Restricting Covenants***

With respect to the first category, Plaintiff first cites to a series of Tweets Defendant made on February 2, 2023, which asked AiB to "stop abusing confidentiality agreements and NDAs to conceal an established history of bullying, harassment, and discrimination at the workplace." *Id.* at ¶ 43. Among other things, Defendant referred to AiB's agreements as "unreasonable" and "oppressive" and claimed to have "witnessed how [AiB] routinely emphasize[s] unenforceable NDAs to create the illusion of leverage to enhance [its] bargaining power over non-native English speakers, and employees who do not know their rights." *Id.* This Tweet included #FreeDenis. *Id.* Plaintiff also alleges Defendant "engage[d] with the Cosmos community" on February 2, 2023, by responding to a comment that "hopefully non-competes will soon be illegal" as follows:

> In CA where AIB cites as applicable jurisdiction, they're illegal in employee contracts. They use them anyway although the State Attorney General has issued an order for employees to stop doing so.  The effects on workers who sign them are well known.  Wage suppression.

*Id.* at ¶ 44.  Plaintiff also identifies a February 3, 2023 post by Defendant stating that it is unlawful and unethical to use severance for bargaining with or bullying employees into restrictive agreements.  *Id.* at ¶ 47.  This Tweet also included #FreeDenis.  *Id.*

2.  *Statements Characterizing AiB*

Plaintiff also complains that, in Defendant's February 2, 2023 Tweets about AiB's use of restrictive covenants, Defendant called AiB "a pathological and hostile organization."  *Id.* at ¶¶ 43, 48.[5]  Plaintiff also alleges that, on February 7, 2023, Defendant "shared a post from a Twitter account with the username @The_Corporati0n," and commented: "The Corporation. What is it? People having fun with centralized pain.  An improv theatre blended with group therapy sessions for persons who've worked in sociopathic organizations."  *Id.* at ¶ 49. Neither the original post nor Defendant's comment identify Plaintiff or Kwon by name, or otherwise.  *See id.*  Plaintiff goes on to characterizes the following series of Tweets from February 24, 2023 as an "attack[] on AiB:"

> Please encourage your team and your fans to refrain from engaging in misrepresentation, intimidation, and smear campaigns.  It's in our collective reputational interest that these basic practices are adhered to –
>
> @jaekwon please model exemplary tone and content.  Do it for the culture.  Lead by example. I ask that your organizations' channels, as well as your employees' personal/work-related channels, provide references for respectful dialogue in the social life of the Cosmos network.
>
> Strongly urge the community to use proper channels, mind the boundaries, and refrain from engaging in ugly personal attacks while discussing pre/proposals.  We are better than this. In proving that we are better than this, I ask @Allbits_inc for their support.

*Id.* at ¶ 92.

---

[5]     Plaintiff alleges this Tweet is from "February 7, 2023,"but it is actually from February 2, 2023. *See* ECF No. 15 at ¶¶ 43, 48.

3. _Statements Regarding Twitter Infiltration_

Plaintiff alleges that, on February 3, 2023, Defendant posted screen shots of a post from a colleague's (Christina) Twitter account and commented:

> A simple theory on $GNOT Christina: @christinacomben calls me "Grace," as colleagues do. But @jaekwon calls me "Gracie." Sounds like the CEO of @Allinbits_inc infiltrated an employee's Twitter account. Would you let your boss take over your socials? $GNOTChristina #FreeDenis.

_Id._ at ¶ 50.

4. _Responsive and Post-Litigation Statements_

In addition to the foregoing categories of statements, Plaintiff also alleges that Defendant made statements in response to statements from AiB and after this litigation was commenced.

On March 1, 2023, Plaintiff alleges that Defendant responded to a post from AiB by describing the process of negotiating with AiB as "[d]enials, obfuscations, diversions, cognitive fallacies, and misrepresentations – galore." _Id._ at ¶ 59. Defendant is also alleged to have "retweeted" a Tweet from the handle @cossmos_dao which states that "[n]o one plays a bigger victim than an oppressor who is suddenly given a tiny taste of what it is like to not have all the power," along with #FreeDenis. _Id._

Defendant is also alleged to have disparaged Plaintiff in response to a Tweet published by Cosmo's co-founder, Ethan Buchman ("Buchman"). First, Buchman posted a photo with Jae Kwon stating "We're back muthaf*ckas" and Defendant responded:

> If being "back" means you two will responsibly and ethically manage your respective organizations, super. If y'all comparing notes on unfair business practices and how to obfuscate conflicts of interests, we then prefer the era of @jaekwon @buchmanster social distancing.

_Id._ at ¶ 60. When Buchman responded that everyone should "spread a little more love," Defendant allegedly responded: "Do you ask him why he's using non competes on former employees to

8

prohibit fork of open source code projects?" and referred him to the freedenis.com petition. *Id.* at ¶ 61.

After the lawsuit was filed, Plaintiff alleges Defendant continued to make public statements about AiB. *Id.* at ¶ 76. Plaintiff alleges that, on April 20, 2023, Defendant hosted a Twitter livestream where she accused Plaintiff of using restrictive covenants as a "tool of intimidation" and claim she would "show how Jae Kwon is a hypocrite and how he's a fraud of decentralization." *Id.* at ¶¶ 77-78. Plaintiff also complains of an April 22, 2023 Tweet where Defendant states: "In so much pain rn. Fk u Jae Kwon." *Id.* at ¶ 79. Then, on April 23, 2023, Plaintiff alleges that Defendant again Tweeted about AiB and its use of restrictive contracts. Id. at ¶ 80. In particular, Defendant stated that she has seen developers "being abused" because "their contracts are written in a foreign language with legalese designed to intimidate and alienate them." *Id.* She called AiB's contracts "sh*tty" and "hypocrisy," and posited that "[t]his is not an issue that affected Denis, only." *Id.* Later that day, Defendant Tweeted that she has "an issue with how AiB structures their employee/contractor agreements with engineers & designers" because "they breach OSS values & practices" and is "illegal and abusive." *Id.* at ¶ 81.

Plaintiff also complains that Defendant sent messages in a "Telegram Messenger chat group with thousands of active members." In these messages, Defendant again expressed her view that "AiB's contracts are specifically crafted to restrict the free speech and trade of developers and designers, causing economic harm." *Id.* at ¶¶ 82-83. Defendant also raised concerns about misinformation, stating that "[w]henever I sensed from Jae [Kwon] that he was working with speculative materials I refused to touch it." *Id.* at ¶ 84. She further explained "[a]ll of the statements I have made about Jae [Kwon] and AiB are criticisms." *Id.* Defendant then referred to her "tweet that ascribes characteristics of sociopathic, diabolical, and hostile organization" to AiB.

9

*Id.* at ¶ 85. Defendant further explained that she had "familiarity with ALL the contracts AIB engineers signed," which all had restrictive covenants. *Id.* at ¶ 86. She then claimed that "[t]he company uses non competes in jurisdictions where they know them to be illegal" and "uses severance to bully former employees to signing unfavorable restrictions on trade and speech." *Id.* Defendant concluded that her response to AiB's lawsuit against her would reveal how Kwon creates "a toxic work environment," "how AiB employees do engage in misinformation and discrediting campaigns," and how the harm Plaintiff claims is the "consequence for years of gross misconduct and mismanagement." *Id.*

Finally, Plaintiff alleges that, on May 2, 2023, Defendant participated in a YouTube livestream where she stated that: (a) AiB has "suffered" because, despite "promised devolution of power . . . in all subsequent restructuring efforts all we see is more consolidation of power . . . that has not been healthy for AiB or for the Cosmos;" and (b) AiB "does not support open-source development via explicit practices that are in violation of federal and state statutes." *Id.* at ¶ 87.

**B.    <u>*Statements by Third Parties*</u>**

In the Supplemental Complaint, Plaintiff recites "similar derogatory statements" that were made by other individuals, concluding that "Defendant is not acting alone in making these false claims against AiB." *See id.* at ¶¶ 51-56. Plaintiff alleges that "Defendant has spurred, encouraged, amplified [these individuals] in putting forth these disparaging and false narratives." *Id.* at ¶ 56. The Complaint, however, does not include any specific factual allegations supporting this assertion or any legal basis to attribute the statements of third parties to Ms. Yu. *See generally*, *id.*

**C.    <u>*Alleged Disclosures of Confidential Information*</u>**

Plaintiff also alleges that Defendant publicly disclosed confidential information (the "Alleged Disclosures") in violation of her obligations under the Consulting Agreement and NDA. *See id.* at ¶¶ 63-64. First, Plaintiff alleges that, on March 26, 2023, Defendant published a Tweet

"that detailed AiB's alleged internal discussions regarding audits of the 'Ignite CLI' software developer tool" and attached "private communications with AiB's CEO that occurred while she was still providing services for AiB." *Id.* at ¶ 65. Defendant's Tweet was made in response a Tweet by Kwon and addressed his claim that certain software was not "of [Fadeev's] architecture." *Id.* In the Supplemental Complaint, the "private communications" between Ms. Yu and Kwon that were allegedly attached to Defendant's Tweet are illegible. *Id.*

Plaintiff also alleges that Defendant authored a governance proposal to fund her legal expenses that disclosed AiB's confidential information. The proposal states that AiB "was originally intended to operate under a Limited Liability Partnership (LLP) inspired structure," but this "structure never materialized" and "[t]he management of AiB remains highly centralized and tightly controlled under Jae Kwon." *Id.* at ¶ 67. The proposal also includes a timeline of the events leading to Ms. Yu's termination from AiB, including her position as lead negotiator for the Ignite "spin-out," Kwon's agreement that Ignite is an "autonomous" team that he will not interfere with, AiB's retention of a law firm to assist with the spin-out, Defendant's termination, and the Ignite team's request for a meeting with AiB's board to discuss Defendant's termination. *Id.* at ¶ 69.

Plaintiff also alleges that Defendant disclosed that the "creative paternity" of CLI ignite was in dispute, she recommended an independent audit of the code, and Kwon reneged on a commitment to conduct the audit in a YouTube livestream on May 2, 2023. *Id.* at ¶ 70. Finally, Plaintiff alleges that Defendant stated in a Tweet that login credentials for Ignite development "changed on 12/20 and subsequently suspended," the Ignite team requested a meeting with the AiB board of directors, but got a meeting with the head of HR instead, and the Ignite management team was subsequently fired. *Id.* at ¶ 71.

## V. **Plaintiff's Causes of Action**

The Supplemental Complaint asserts two causes of action against Defendant. The First Cause of Action asserts that the Defendant violated the Non-Disparagement Provision in the Consulting Agreement. *See id.* at ¶¶ 94-99. The Supplemental Complaint does not specifically allege each statement that supposedly breached the Non-Disparagement Provision. *See id.* Instead, Plaintiff alleges only Defendant breached the Non-Disparagement Provision by: (a) "making statements alleging that AiB was engaging in unethical and unlawful practices by forcing its workers into non-competes, NDAs, and confidentiality agreements as a means to suppress information and gain leverage over its workers;" and (b) referring to Plaintiff "as 'pathological and hostile' and a 'sociopathic organization[].'" *Id.* at ¶¶ 96-97. It is, thus, not clear whether Plaintiff contends that all of the statements by Defendant recited in the relevant sections of the Supplemental Complaint breach the Non-Disparagement Provision, or just some.[6] The Second Cause of Action asserts that Defendant's allegedly breached the Confidentiality Provisions in the Consulting Agreement and NDA by "publishing details regarding AiB's internal and non-public business strategies, negotiations, and personnel management." *Id.* at ¶¶ 100-05.

## ARGUMENT

## I. **Legal Standard**

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. v. Twombly*, 550 U.S.

---

[6] Defendant assumes for purposes of this Motion that Plaintiff is not seeking to hold Defendant liable for the statements by third parties recited in the Supplemental Complaint, as Plaintiff does not allege any basis to legally impute such statements to Defendant. Such third-party statements are, accordingly, not encompassed by the term "Challenged Statements" used herein.

544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere

conclusory statements, do not suffice." *Id*. (finding that the pleading standard "demands more than

an unadorned, the-defendant-unlawfully-harmed-me accusation"). "The plausibility standard is

not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant

has acted unlawfully." *Id*. "Where a complaint pleads facts that are 'merely consistent with' a

defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement

to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

## II.     The First Cause of Action Should Be Dismissed Because Plaintiff
## Fails to Allege Defendant Made the Challenged Statements With Actual Malice

### A.     *New York's Anti-SLAPP Statute*
### *Applies to Plaintiff's First Cause of Action*

Section 76-a of New York's anti-SLAPP statute ("Section 76-a" or "§ 76-a") expressly

governs "actions involving public petition or participation." *See* N.Y. Civ. Rights Law § 76-a. An

"action involving public petition or participation" is defined as a claim based upon "any

communication in a place open to the public or a public forum in connection with an issue of public

interest." N.Y. Civ. Rights Law § 76-a(1)(a). "Public interest" is construed broadly to mean "any

subject other than a purely private matter." N.Y. Civ. Rights Law § 76-a(1)(d); *see Albert v.*

*Loksen*, 239 F.3d 256, 269 (2d Cir. 2001) (New York courts favor an "extremely broad

interpretation" of what constitutes "matter[s] of legitimate public interest"). Thus, a matter is of

public interest if it is "a dispute that in fact has received public attention because its ramifications

will be felt by persons who are not direct participants." *Fairley v. Peekskill Star Corp.*, 83 A.D.2d

294, 298, 445 N.Y.S.2d 156 (2d Dep't 1981) (quoting *Waldbaum v. Fairchild Publ'ns, Inc.*, 627

F.2d 1287, 1296 (D.C. Cir. 1980)). This includes "a matter of political, social, or other concern to

the community," even if it does not "affect the general population." *Abbott v. Harris Publ'ns, Inc.*,

No. 97-CV-7648 (JSM), 2000 WL 913953, at *7 (S.D.N.Y. July 7, 2000).

Plaintiff's First Cause of Action for breach of the Non-Disparagement Provision is subject to § 76-a because the Challenged Statements are public statements on an issue of public interest. *See Int'l Shoppes, Inc. v. At the Airport, LLC*, 131 A.D.3d 926, 927 (N.Y. App. Div. 2d Dep't 2015) (holding that claim for breach of a settlement agreement was an action "involving public petition and participation within the meaning of Civil Rights Law § 76-a").[7] First, most of the Challenged Statements were published on Twitter, which is indisputably a public forum. *See* ECF No. 15 at ¶¶ 41-50, 59-62, 77-81, 92; *Ctr. for Med. Progress v. Planned Parenthood Fed'n of Am.*, 551 F. Supp. 3d 320, 332 (S.D.N.Y. 2021); *see also Penrose Hill, Ltd. v. Mabray*, 479 F. Supp. 3d 840, 854 (N.D. Cal. 2020) (collecting cases). The other Challenged Statements were made on YouTube and in the Telegram group chat including "thousands" of users, which are, likewise, public forums. *See* ECF No. 15 at ¶¶ 82-87; *Margolies v. Rudolph*, Case No. 21-cv-2447-SJB, 2022 WL 2062460, at *7 (E.D.N.Y. June 6, 2022) (finding that a "closed" group forum which contains "no meaningful barriers to entry" and contains thousands of participants was a public forum); *Coleman v. Grand*, 523 F. Supp. 3d 244, 265-66 (E.D.N.Y. 2021) (finding that Facebook post was made in a public forum).

The Challenged Statements were also made "in connection with an issue of public interest." Plaintiff admits that all of the Challenged Statements pertain to Plaintiff's alleged unethical practices and intimidation tactics in dealing with individuals who work for the company. *See*

---

[7]   *See also Aristocrat Plastic Surgery, P.C. v. Silva*, 206 A.D.3d 26, 29, 32 (N.Y. App. Div. 1st Dep't 2022) (holding that anti-SLAPP statute applied to tortious interference with contract claim arising from public statement on a matter of public concern); *Mable Assets, LLC v. Rachmanov*, 192 A.D.3d 998, 1000-01 (N.Y. App. Div. 2d Dep't 2021) (applying anti-SLAPP statute to claim for intentional interference with prospective business advantage); *Navellier v. Sletten* 29 Cal.4th 82, 90-92 (2002) (concluding that nothing in California's anti-SLAPP statute excluded any particular cause of action from its operation and that the statute could be applied in a breach of contract claim).

Section III and IV.A, *supra*. Indeed, the Complaint alleges that, before any of the Challenged Statements were made, members of the Cosmos "community" were publicly expressing frustration over the contractual restrictions Plaintiff imposed on Fadeev. *See* ECF No. 15 at ¶ 39. The Challenged Statements are, on their face and expressly alleged to be, a part of this public discourse about the use of restrictive covenants and other coercive tactics in the cryptocurrency industry, which is admittedly of interest not just to those who work in that industry, but those who invest in that industry as well. *See, e.g.*, *id.* at ¶¶ 40 ("A significant portion of Defendant's derogatory and disparaging remarks occurred in support of #freeDenis posts."), 81 (stating, regarding this lawsuit, "I'm not the only person the lawsuit impacts. In fact, the manner of Jae Kwon's pleading has made all Cosmos devs notional defendants"), 90-91 (alleging that Challenged Statements impacted Plaintiff's ability to "foster new economic opportunities" and "retain talented software developers"). The Challenged Statements are, thus, also indisputably of public interest and concern. *See Coleman*, 523 F. Supp. 3d at 259 (finding that allegations of sexual impropriety and power dynamics in the music industry made in the wake of the #MeToo movement were "indisputably" of public concern).

B.  ***Plaintiff Has Failed to Allege That***
    ***The Challenged Statements Were Made With Actual Malice***

Because Plaintiff's First Cause of Action against Defendant is an "action[] involving public petition or participation," the strictures of § 76-a apply. Plaintiff, accordingly, must plead and prove "by clear and convincing evidence that any communication which gives rise to the action was made with knowledge of its falsity or with reckless disregard of whether it was false." N.Y. Civ. Rights Law § 76-a(2). Commonly referred to as "actual malice," this "standard does not measure malice in the sense of ill will or animosity, but instead the speaker's subjective doubts about the truth of the publication." *Church of Scientology Int'l v. Behar*, 238 F.3d 168, 174 (2d

Cir. 2001); *see also Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 510, 111 S. Ct. 2419, 2429, 115 L. Ed. 2d 447 (1991); *Coleman*, 523 F. Supp. 3d at 260.

The Supplemental Complaint fails to plead that any of the Challenged Statements were made with actual malice. While Plaintiff alleges that Defendant "knowingly" made some false statements about Plaintiff (*see, e.g.*, ECF No. 15 at ¶¶ 9, 45), these conclusory allegations are not enough to satisfy the actual malice standard. *See Ashcroft*, 556 U.S. at 678 (conclusory allegations unsupported by specific factual allegations insufficient to support a plausible claim for relief); *Coleman*, 523 F. Supp. 3d at 260-61 (quoting *Celle v. Filipino Reporter Enters., Inc.*, 209 F.3d 163, 183 (2d Cir. 2000)) (courts infer actual malice from "objective facts"). That is because Plaintiff has failed to allege any *specific facts* to support the inference that Defendant knew the Challenged Statements were false. *See generally*, ECF No. 15. Plaintiff has not alleged: (a) any statements by Defendant that indicate she knew the Challenged Statements were false; (b) any information available to Defendant that would raise doubt as to the truth of her statements; (c) that Defendant was relying on inherently unreliable information; or (d) any inherent improbability in Defendant's concern over the subject matter of the Challenged Statements. *See Coleman*, 523 F. Supp. 3d at 260 (quoting *Liberty Lobby, Inc. v. Dow Jones & Co.*, 838 F.2d 1287, 1293 (D.C. Cir. 1988)) (objective facts supporting actual malice "may include 'the defendant's own actions or statements, the dubious nature of his sources, [and] the inherent improbability of the story'").

In fact, the allegations of the Supplemental Complaint undercut any inference that Defendant knew the Challenged Statements were false or recklessly disregarded the truth. *First*, Plaintiff alleges that Defendant was an independent contractor for Plaintiff and signed the Consulting Agreement with the Plaintiff. *See* ECF No. 15 at ¶¶ 6-7. Defendant, thus, has personal knowledge about Plaintiff's practices when it comes to dealing with employees and contractors.

16

In fact, in one of the Challenged Statements, Defendant explicitly states that she has "familiarity with ALL the contracts AIB engineers signed." *See id.* at ¶ 86. *Second*, while Plaintiff alleges that Defendant's Consulting Agreement does not contain a non-compete provision, Plaintiff admits that, before any of the Challenged Statements were published, Cosmos community members were claiming on Twitter that Fandeev was prevented from using software he developed due to a three-year non-compete clause in his consulting agreement with Plaintiff. *See id.* at ¶¶ 37-40, 46. Plaintiff, further, admits that Fandeev's consulting agreement did, in fact, contain a non-compete provision. *See id.* at ¶ 39. *Finally*, Plaintiff admits that other individuals who had business relationships with the Plaintiff have made public comments that "parallel" Defendant's statements about Plaintiff. *See id.* at ¶¶ 37-40, 51-56. Even if the foregoing public chatter was, as Plaintiff alleges, false, it nonetheless reflects that Defendant had a sound basis to believe her "parallel" statements were true.

The Court should, accordingly, dismiss the Complaint because Plaintiff has failed to allege Defendant made any of the Challenged Statements with actual malice. *See, e.g.*, *Jacob v. Lorenz*, No. 21 Civ. 6807, 2022 WL 4096701, at *13 (S.D.N.Y. Sept. 7, 2022) (dismissing claim subject to § 76-a on Rule 12(b)(6) motion to dismiss for failure to plead actual malice); *Margolies*, 2022 WL 2062460, at *6-8 (same).

## III. The First Cause of Action Should Be Dismissed Because The Challenged Statements Do Not Breach the Non-Disparagement Provision

The Non-Disparagement Provision only prohibits false statements by Defendant about the Plaintiff that tend to injure the Plaintiff's reputation. The Challenged Statements, however, are opinions and/or figurative, hyperbolic statements incapable of being proven true of false; and some do not even have the capacity to injure the Plaintiff. For multiple reasons, the Challenged Statements do not violate the Non-Disparagement Provision.

**A.**     *The Non-Disparagement Provision Prohibits*
         *Only False, Injurious Statements Concerning The Plaintiff*

The Non-Disparagement Provision only prohibits statements about the Plaintiff that are false or inaccurate in some way.  The Non-Disparagement Provision allegedly prohibits Defendant from making "any defaming and/or disparaging, derogatory, misleading or false statement" about the Plaintiff.  ECF No. 15 at ¶ 32.  It is well established that a "defaming" statement is a false statement that has a natural tendency to injure the subject.  *See Price v. Stossel*, 620 F.3d 992, 998 (9th Cir. 2010); *Jacob*, 2022 WL 4096701 at *7, 10-11; *Mirza v. Amar*, 513 F. Supp. 3d 292, 297 (E.D.N.Y. 2021).  Similarly, the term "disparagement" has been interpreted to be "a false and injurious statement that discredits or detracts from the reputation of another's property, product, or business."  *See Bernstein v. O'Reilly*, No. 17 Civ. 9483, 2019 WL 10995111, at *7 (S.D.N.Y. Mar. 5, 2019); *Kamfar v. New World Rest. Grp., Inc.*, 347 F.Supp.2d 38, 49 n.55 (S.D.N.Y. 2004) (quoting Black's Law Dictionary 483 (7th ed. 1999)); *Hartford Casualty Ins. Co. v. Swift Distribution, Inc.*, 59 Cal.4th 277, 294 (Cal. 2014).  The Non-Disparagement Provision is, thus, properly construed as prohibiting only false and injurious statements about the Plaintiff.  *See Parsable, Inc. v. Landreth*, Case No. 22-cv-01741-CRB, 2022 WL 19692034, at *5 (N.D. Cal. Aug. 5, 2022) (dismissing claim for breach of non-disparagement provision where plaintiff failed to "allege enough information about the statements to 'demonstrate why they are false,' which does not give the Court 'enough information to determine whether the alleged statements were actionable statements of fact or unactionable statements of opinion'"); *Bernstein*, 2019 WL 10995111, at *7 (dismissing claim for breach of non-disparagement clause where challenged statements were not defamatory and did not implicate the plaintiff).  True statements, statements incapable of being proven true or false, and statements that do not impact the Plaintiff's reputation do not violate the Non-Disparagement Provision.

**B.**     ***Statements of Opinion Do Not Violate the Non-Disparagement Provision***

1.     *Statements of Opinion Cannot Be Proven True or False*

There is "no such thing as a false idea." *See Mirza*, 513 F. Supp. 3d at 297 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 339 (1974)). "[A]n opinion cannot be proved false." *Jacobus v. Trump*, 55 Misc. 3d 470, 476 (N.Y. Sup. Ct. 2017), *aff'd*, 156 A.D.3d 452 (N.Y. App. Div. 2017) (citing *Mann v. Abel*, 10 N.Y.3d 271, 276 (N.Y. 2008)). Thus, "[o]nly 'a provable statement of fact [ ] – unlike a statement of opinion or a loose, figurative or hyperbolic statement – can be actionable'" as defamatory or disparaging – and, by extension, breach the Non-Disparagement Provision. *Mirza*, 513 F. Supp. 3d at 297 (quoting *Ganske v. Mensch*, 480 F. Supp. 3d 542, 552 (S.D.N.Y. 2020)); *see Parsable*, 2022 WL 19692034, at *5 (holding that a nonactionable statement of opinion could not sustain a claim for breach of a non-disparagement provision); *Bernstein*, 2019 WL 10995111, at *8 (holding that statement that did not defame the plaintiff cannot plausibly violate a non-disparagement clause).

2.     *The Challenged Statements Are Statements of Opinion*

The Challenged Statements are classic examples of opinions and "loose, figurative, or hyperbolic speech" that one expects to find when matters of public interest are being debated. *See Jacob*, 2022 WL 4096701, at *11; *Morningstar, Inc. v. Superior Court*, 23 Cal.App.4th 676, 690-91 (1994). Defendant is alleged to complain of "corrupt" and "unethical" practices by the Plaintiff to "bully[ ]" and coerce its workers. *See* Background, Section IV.A, *supra*. She is also alleged to have characterized the Plaintiff as a "pathological and hostile" and "sociopathic organization[ ]." *See* Background, Section IV.A, *supra*. Courts have routinely held that these types of statements are non-actionable opinions because they cannot be proven to be true or false. *See, e.g.*, *Chau v. Lewis*, 771 F.3d 118, 129 (2d Cir. 2014) ("[T]he epithets . . . 'sucker,' 'fool,' 'frontman,' 'industrial waste,' . . . and 'crooks or morons' . . . are hyperbole and therefore not actionable

opinion."); *Jacob*, 2022 WL 4096701, at *11 (finding statements about "ethical" practices and "predatory" behavior to be non-actionable opinions incapable of being proven true or false); *Small Bus. Bodyguard Inc. v. House of Moxie, Inc.*, 230 F. Supp. 3d 290, 312 (S.D.N.Y. 2017) (concluding that stating that the plaintiff "engaged in 'extortion, manipulation, fraud, and deceit'" is a "a vague statement . . . of the 'loose, figurative, or hyperbolic' sort that is not actionable for defamation"); *Morningstar*, 23 Cal.App.4th at 691-92 (collecting cases).[8] The Challenged Statements, which are Defendant's opinions about how AiB conducts itself, cannot run afoul of the Non-Disparagement Provision. The Court should, accordingly, dismiss the First Cause of Action.

## C. *Certain Challenged Statements Cannot Injure the Plaintiff*

### 1. *Not "Of and Concerning" the Plaintiff*

Plaintiff bears the burden of establishing that all the Challenged Statements concern the Plaintiff. *See Bernstein*, 2019 WL 10995111, at *6-7. Yet, the Challenged Statement described in paragraph 49 of the Supplemental Complaint has no facial reference to Plaintiff or any of its personnel. *See* ECF No. 15 at ¶ 49. Plaintiff has, thus, not plead that this Challenged Statement has "defamed" or "disparaged" the Plaintiff within the meaning of the Non-Disparagement Provision. *See Bernstein*, 2019 WL 10995111, at *7 (a statement that does not implicate the plaintiff cannot "defame" or "disparage" the plaintiff within the meaning of a non-disparagement clause). This Challenged Statement cannot sustain the First Cause of Action.

---

[8] Defendant's theory that Kwon "infiltrated an employee's Twitter account"is also a non-actionable opinion because she states the facts upon which her theory is based. *See* ECF No. 15 at ¶ 50; *see, e.g.*, *Sorvillo v. St. Francis Preparatory Sch.*, 607 Fed. App'x 22, 24-25 (2d Cir. 2015) (holding a statement of opinion accompanied by the facts upon which it is based and does not imply the existence of other undisclosed facts is a non-actionable opinion).

2.      *Not Injurious to Plaintiff*

The string of Tweets reproduced and described in paragraph 92 of the Supplemental Complaint are, facially, not capable of violating the Non-Disparagement Provision. *See* ECF No. 15 at ¶ 92. In these Tweets, Defendant merely asks Plaintiff and its CEO to "[l]ead by example" and "for their support" in reshaping the culture and practices of the Cosmos network. *See id.* Such a request cannot expose Plaintiff to public hatred or ridicule and, thus, cannot violate the Non-Disparagement Provision. *See Jacob*, 2022 WL 4096701, at *10 (finding inquiry to plaintiff to be incapable of defamatory meaning).[9] This Challenged Statement, thus, also cannot sustain the First Cause of Action.

## IV.     The Supplemental Complaint Should Be Dismissed Because The Non-Disparagement and Confidentiality Provisions Are Unenforceable

The Court should dismiss both the First and Second Causes of Action because the Non-Disparagement and Confidentiality Provisions are unenforceable. Although Plaintiff does not attach either the Consulting Agreement or NDA to its Complaint, Plaintiff alleges that both agreements are governed by California law. *See* ECF No. 15 at ¶ 22. Under California law, an employer may not, as a condition of employment, require an employee to sign an agreement that has the effect of denying the employee the right to disclose information about unlawful acts in the workplace. *See* Cal. Gov. Code § 12964.5(a)(1)(B)(i). Any agreement that might otherwise have this effect must provide that "nothing in this agreement prevents you from discussing or disclosing information about unlawful acts in the workplace, such as harassment or discrimination or any

---

[9]      As set forth above, Plaintiff identified statements by third parties in its Supplemental Complaint, but alleges no basis to attribute those statements to the Defendant. *See* Background, Section IV.B, *supra*. These statements by third parties, thus, cannot plausibly be attributed to Defendant, and Defendant cannot violate the Non-Disparagement Provision through statements she did not plausibly make. *See Bernstein*, 2019 WL 10995111, at *7.

other conduct that you have reason to believe is unlawful." Cal. Gov. Code § 12964.5(a)(1)(B)(ii). If not, the offending provisions are considered "contrary to public policy" and "unenforceable." Cal. Gov. Code § 12964.5(a)(2).

Plaintiff does not allege that the Consulting Agreement or NDA expressly provide that the agreement shall not bar Defendant from discussing or disclosing workplace misconduct. *See generally*, ECF No. 15. In fact, Plaintiff is seeking to enforce the Non-Disparagement and Confidentiality Provisions to do precisely what California law prohibits: silence Ms. Yu from discussing or disclosing "unlawful acts in the workplace" and "other conduct that [she has] reason to believe is unlawful." These provisions are, accordingly, unenforceable and cannot sustain the Causes of Action in the Complaint. *See G.L. Mezzetta, Inc. v. City of Am. Canyon*, 78 Cal. App. 4th 1087, 1093-94 (2000) (affirming dismissal of breach of contract claim where alleged contract was found to be unenforceable as a matter of law). The First and Second Causes of Action should be dismissed.

## CONCLUSION

For the foregoing reasons, the Court should grant the Motion and dismiss the Supplemental Complaint, with prejudice, and grant such other further relief as the Court deems just and proper.

Dated:  June 9, 2023
      New York, New York

                                        Respectfully submitted,

                                        BROWN RUDNICK LLP

                                        By: */s/ Jessica N. Meyers*
                                        Jessica N. Meyers, Esq.
                                        Samuel J. Hickey, Esq.
                                        7 Times Square
                                        New York, New York 10036
                                        Tel: (212) 209-4800
                                        Fax: (212) 209-4801
                                        jmeyers@brownrudnick.com
                                        shickey@browrudnick.com

Stephen D. Palley, Esq. (*pro hac forthcoming*)
601 13th Street NW, #600
Washington, D.C. 20005
Tel: (202) 536-1766
Fax: (617) 289-0766
spalley@brownrudnick.com

*Counsel for Defendant Grace Yu*